**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JOSE MACIA,**
      **Plaintiff,**

vs.                                           Case No: 3:06cv185/RV/MD

**UNITED STATES OF AMERICA,**
      **Defendant.**

---

**ORDER and
<u>REPORT AND RECOMMENDATION</u>**

This case was filed pursuant to Federal Tort Claims Act ("FTCA") in the United States District Court for the District of Columbia, and transferred to this court on April 26, 2006. (Doc. 20). Plaintiff, an inmate in the custody of the federal Bureau of Prisons, seeks compensation for the loss of personal property allegedly caused by the negligent acts of the United States Marshal's Service. Pursuant to court order, the defendant filed a special report in opposition to the plaintiff's complaint, (doc. 35) and plaintiff filed a response. (Doc. 39). The court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment (doc. 40). The plaintiff filed a "further response motion" (doc. 42), and most recently a "motion to show cause" in which he seeks to hold the office of the United States Attorney in contempt for its allegedly deficient special report. (Doc. 47).

**BACKGROUND**

Plaintiff is currently incarcerated at the Federal Correctional Institution Allenwood, in White Deer, Pennsylvania. During mid-September of 2004, at the time the events giving rise to this complaint took place, he was incarcerated at Santa Rosa County Jail ("SRCJ") in Milton, Florida, under the custody of the United States Marshal's Service ("USMS") awaiting sentencing on federal charges. Plaintiff states that when Hurricane Ivan made landfall in the greater Pensacola area on September 16, 2004, the jail was destroyed and he suffered inhumane conditions of confinement until his evacuation on September 17, 2004. (Doc. 1, Complaint, ¶ 1). When he was evacuated to the Federal Detention Center in Tallahassee, he claims was not permitted to take any personal property, including legal papers. (¶ 2). Plaintiff states that after a six week delay in attempting to recover his property, he was told to file a claim. (¶ 2). Plaintiff filed a claim seeking $500 in property damage for the loss of items identified as a phonebook, photographs, toiletry, shower shoes, socks, underwear, t-shirts, a gold filling, commissary items, legal documents, books, stamps and glasses. (Doc. 1, exh. A2). His claim was referred by the Regional Counsel of the Bureau of Prisons to the Marshal's Service. (¶ 3). Although plaintiff sent several letters of inquiry about his claim, he states that the Marshal's Service has "refused to act or respond." (¶ 3). He now seeks the $500.00 plus interest, court costs and fees, as well as punitive damages for the Marshal's Service's "incomprehensible policy of lassitude." (¶ 4).

Pursuant to court order, the defendant filed a special report in response to the complaint (doc. 35) which is now construed as a motion for summary judgment. Defendant contends that it is entitled to summary judgment for several reasons. First, it maintains that two exceptions to the FTCA, the "discretionary function" exception and the "detention of goods" exception, shield it from liability. It also contends that plaintiff has failed in his proof with respect to a cause of action for negligence, that the defendant cannot be held liable for an act of God, and that the

defendant cannot be held liable for actions or omissions of the county jail because of the jail's status as an independent contractor.  The government also correctly noted that the United States of America is the only proper defendant in an action filed pursuant to the FTCA.  28 U.S.C. § 2679(a).  Pursuant to Rule 17(a) the caption of this case will be amended to so reflect.

Plaintiff has clarified his claim in his responsive pleading to indicate he only seeks relief for loss of property, not for any decisions related to custodial issues made around the time of Hurricane Ivan.  Therefore, much of the factual information presented by the government is not pertinent.[1]  In support of its summary judgment motion, the government has presented the declarations of Thomas Miller, who was then the supervisory Deputy United States Marshal in charge of the USMS office in Pensacola, Glenn Miller, a Deputy United States Marshal then assigned to the Panama City Office of the United States Marshal, and Linda Belyew, then the Supervisory Deputy United States Marshal in charge of operations for the Tallahassee and Gainesville Divisions of the USMS. (Doc. 35, exh. 1, 2, & 3).  Matters that are relevant to the instant claim will be summarized herein.

At the time of the events giving rise to this complaint, the USMS had contracts for housing federal prisoners with both Escambia and Santa Rosa County Florida. (Doc. 35, exh. 1 at 1).  When Hurricane Ivan made landfall on September 16, 2004, it caused significant damage to housing, roadways, power, water, and communication capability throughout the greater Pensacola area.  At that time, there were 41 male prisoners, including the plaintiff, and 4 female prisoners in the custody of the USMS who were temporarily housed at the Santa Rosa County Jail ("SRCJ"). (Doc. 35, exh. 1 at 2; exh. D to exh. 3 at 4).  Because there was damage to the roof of the SRCJ which allowed water to come into the jail cells, along with insufficient electrical power, the USMS organized personnel and transport vehicles to relocate those

---

[1]The government, with good reason, interpreted plaintiff's claim as encompassing an allegation that the USMS was negligent in not removing him from Santa Rosa County Jail prior to the landfall of Hurricane Ivan.

Case No: 5:05cv173/SPM/MD

prisoners to the Tallahassee area.  (Doc. 35, exh. 1 at 5, exh. 2 at 2, exh. 3 at 5). USMS directives provided at the time that prisoners in its custody were allowed to keep in their possession only their legal papers, one religious medal, eye glasses or contacts with case, prescribed medicine and health aids, up to fifty dollars in currency, a plain wedding band, a watch, and one set of clothing.  (Doc. 35. Exh. 2 at 3; exh. C3 to exh. 3).  Medicines and cash were required to be deposited at the institution. (Doc. 35, exh. 2 at 3; exh. 3 at 6).  Before the evacuation, prisoners "were given the opportunity to bag some of their personal effects and place their names and identifying information on the outside of the bags [which] were transported to the Pensacola USMS office for safekeeping and eventual return to the respective prisoners."  (Doc. 35, exh. 1 at 5-6).  Consistent with USMS directives, before being transported, the prisoners were each searched, allowed to change into the clothes they had arrived in, and permitted to collect legal papers that had not been destroyed by the intrusion of water. (Doc. 35, exh. 2 at 3; exh. 3 at 6).[2]  Because of the nature of the emergency and the exigent circumstances, including lack of manpower and inadequate lighting, no inventories of prisoner's personal property (Form USM-18) were prepared at the time of transport. (Doc. 35, exh. 2 at 3; exh. 3 at 6).  And,  because the records of lists of individual prisoner's medications and funds could not be retrieved from the jail's computers at the time of evacuation, these items could not be taken with the prisoners.  (Doc. 35, exh. 2 at 3).  Medicines that had not been destroyed by the water and all prisoner funds were sent to each prisoner after power was restored. (Doc. 35, exh. 3 at 7).  With respect to plaintiff's belongings, no bag of personal effects was identified as belonging to the plaintiff, (doc. 35, exh. 1 at 6), there is no documentation either at SRCJ or in the possession of the USMS indicating that plaintiff had any legal papers, and there is no other property identified as belonging to the plaintiff in the custody of either the SRCJ or

---

[2]It would appear that legal papers would be the only items from the list of permissible property items that would need to be bagged, as the rest of the items could be carried or worn.

*Case No: 5:05cv173/SPM/MD*

the USMS. (Doc. 35, exh. 3 at 7). Records indicate that plaintiff had one pair of pants, one pair of shoes and a shirt maintained at the SRCJ, and that he wore those the night of the evacuation. (Doc. 35, exh. 3 at 7). The $58.17 that he had on deposit at the SRCJ was forwarded to his inmate account with the Bureau of Prisons. (Doc. 35, exh. F to exh. 3 at 7). Plaintiff's is the only tort claim filed by prisoners housed at the SRCJ. (Doc. 35, exh. 1 at 6; exh. 3 at 8).

**Applicable law and regulations**

The FTCA, 28 U.S.C. §§ 1346, 2671-2680, is a limited waiver of sovereign immunity which subjects the federal government to liability for certain torts committed by federal employees who are acting within the scope of their employment. It provides a cause of action for individuals to recover for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Otherwise stated, the FTCA was "designed to provide redress for ordinary torts recognized by state law." *Stone v. United States,* 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation and citation omitted)). Unless, according to the law of Florida, the United States could be liable for the alleged tort of its employee if it were a private person, then not only is the sovereign's immunity intact, but the district court is without subject matter jurisdiction and must dismiss the case. *Lawrence v. Dunbar,* 919 F.2d 1525 (11th Cir. 1990) (citations omitted).

The acts or omissions complained of in this case took place within the State of Florida, and therefore Florida law governs. 28 U.S.C. § 1346(b)(1); *Stone*, 373 F.3d at 1130; *Gonzalez-Jimenez de Ruiz v. United States*, 378 F.3d 1229, 1230 (11th Cir. 2004) (The FTCA requires that the "whole law of the State where the act or omission

occurred[,]' including its choice of law rules, be applied" )(quoting *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962)). To state a cause of action for negligence under Florida law, plaintiff must prove (1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a failure on the part of the defendant to perform that duty; a breach; (3) a causal connection between the conduct and the resulting injury and (4) an actual injury or damage to the plaintiff. *Clay Elec. Co-op, Inc., v. Johnson,* 873 So.2d 1182 (Fla. 2003); *Mosby v. Harrell*, 909 So.2d 323, 327 (Fla. 1st DCA 2005); *Tieder v. Little*, 502 So.2d 923, 925 (Fla. 3rd DCA 1987).

## LEGAL ANALYSIS

### Summary Judgment Standard

Defendant's motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, F.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Evidence presented by plaintiff in opposition to the motion for summary judgment, and all factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In order to prevail in its motion for summary judgment, the defendant must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. If the defendant

successfully negates an essential element of plaintiff's case, plaintiff then has the burden to show the existence of a genuine issue of material fact. Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex, supra; Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994). Plaintiff must produce more than a scintilla of evidence and cannot rely upon solely conclusory allegations. *Celotex Corp.*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

Defendant first contends that it is immune from liability under the "discretionary function" exception to the FTCA. Title 28 U.S.C. § 2680 specifically provides for certain exceptions to the FTCA's waiver of sovereign immunity. Relevant to this case, the "discretionary function" exception set forth in §2680(a) provides that the United States is not liable for:

> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (West 2005); *United States v. Gaubert*, 111 S.Ct. 1267, 1273 (1991). If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction. *Cohen v. United States,* 151 F.3d. 1338, 1340 (11th Cir. 1998) (citing *Powers v. United States*, 996 F.2d 1121, 1126 (11th Cir.1993)). As its name suggests, this exception encompasses only acts that are discretionary in nature, acts that "involv[e] an element of judgment of choice." *Gaubert,* 111 S.Ct. at 1273 (citing *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953)). It is designed to protect only "governmental actions and decisions based on considerations of public policy." *Gaubert*, 111 S.Ct. at 1274 (citing *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959).

**Defendant contends that to the extent that plaintiff's claims are based on any decision of the United States Marshal Service ("USMS") concerning plaintiff's housing at Santa Rosa County Jail during the hurricane, his transfer to another facility after the hurricane, or his transport during the time period in question, his claims squarely under the discretionary function exception. As noted above, the plaintiff's response to the special report clarifies that the challenged action is the Deputy Marshals' alleged order not to pack or transport personal property during the evacuation. The government, having more broadly interpreted plaintiff's claim, did not offer any argument in support of the application of this exception to any USMS decisions regarding transporting personal property.**

**Under the exigent circumstances of the evacuation, in light of the conditions described by plaintiff, it would appear that a USMS decision to evacuate the prisoners promptly, leaving transport of personal property for a later time, would fall squarely within the discretionary function exception, and this is what plaintiff claims the USMS did. If that is indeed what the USMS did, the defendant would be entitled to judgment based on the exception. However, the defendant insists that this is not what happened. It says that the USMS allowed prisoners to bag and transport certain personal effects. The discretionary function exception would therefore be irrelevant, because the defendant says the USMS exercised its discretion in a way that was *favorable* to plaintiff being allowed to bag and protect his property.**

**Defendant next argues that the "detention of goods" exception applies. The FTCA prohibits an individual from recovering money damages for "any claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." Title 28 U.S.C. 2680(c). The Supreme Court has construed this exception to apply to any claim arising out of the detention of the goods, including a claim resulting from negligent handling or storage of detained property. *Kosak v. United States*, 465 U.S. 848, 854, 104 S.Ct. 1519, 1523-24, 79 L.Ed.2d 860 (1984); see also *Matsushita Electric Co. v.***

*Zeigler*, 158 F.3d1167 (11th Cir. 1998). In *Kosak,* an art collector alleged in an FTCA suit that artworks he owned were damaged when the United States Customs Service seized and detained them. *Id.*, at 849-850, 104 S.Ct. 1519. The Supreme Court found that his claim was barred by the detention of goods exception. In assessing the applicability of the exception, the Court explained that the general rule that a sovereign immunity waiver will be strictly construed in favor of the sovereign, is "unhelpful" in the FTCA context, where "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute," which "waives the Government's immunity from suit in sweeping language." *Dolan v. United States Postal Service*, 126 S.Ct. 1252, 1254 (2006) (citing *Kosak*, 465 U.S., at 853, n. 9, 104 S.Ct. 1519; *United States v. Yellow Cab Co.*, 340 U.S. 543, 547, 71 S.Ct. 399, 95 L.Ed. 523 (1951); see also *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (observing "[w]e have on occasion narrowly construed exceptions to waivers of sovereign immunity where that was consistent with Congress' clear intent, as in the context of the 'sweeping language' of the [FTCA]" (quoting *Yellow Cab Co.*, supra, at 547, 71 S.Ct. 399))). In *Schlaebitz v. United States*, 924 F.2d 193, 195 (11th Cir. 1991) the Eleventh Circuit found that the actions of U.S. Marshals who wrongfully released a parolee's luggage to a third party were covered under this exception. See also *O'Ferrell v. United States*, 253 F.3d 1257, 1264 (11th Cir. 2001) (exception applies to federal law enforcement officials). Because the marshals in *Schlaebitz* were acting within the performance of their lawful duties, the FTCA exempted the plaintiff's claim, and his case was dismissed for lack of subject matter jurisdiction. *Schlaebitz*, 924 F.2d at 195. The government maintains that even if it negligently handled plaintiff's property, a contention that it does not admit and that has not been proven, the plaintiff's case must be dismissed. Taking the facts in the light most favorable to the plaintiff, that his property was under custodial control of the U.S. Marshals and that it was lost or destroyed due to the Marshals' refusal to allow him to take the property with him during the

evacuation, the detention of goods exception applies and his claim must be dismissed for lack of subject matter jurisdiction.

Even if neither of the aforementioned legal exceptions apply, plaintiff's claim fails because he has not alleged the factual basis for a cause of action for negligence under Florida law. *Lawrence v. Dunbar,* 919 F.2d 1525 (11th Cir. 1990). The first step in establishing a negligence claim is that plaintiff must show that the defendant had a duty. *Clay Elec. Co-op, Inc., v. Johnson,* 873 So.2d 1182 (Fla. 2003). According to the USMS Directive 9.5, prisoners in USMS custody, whether in a contract detention facility or a federal facility, may retain in their possession the following items: legal papers or materials relevant to current or draft court proceedings, one religious medal, eye glasses or contact lenses with case, prescribed medicine and health items, up to $50.00 in U.S. currency, a plain wedding band, a watch, and one set of court clothing.  (Doc. 35. Exh. 2 at 3; exh. C3 to exh. 3).  This directive provides specific guidelines concerning unallowable or excess property and the treatment thereof, as well as procedures for inventorying property. A duty to ensure that prisoners may maintain allowable property can arguably be derived from this regulation.

The next question is whether there was a breach of this duty.  First, the court notes that plaintiff's claim of loss far exceeded the list of items permitted by the USMS.[3]  In his claim, he alleged the loss of a phonebook, photographs, toiletry, shower shoes, socks, underwear, t-shirts, a gold filling, commissary items, legal documents, books, stamps and glasses.  (Doc. 1, exh. A2).  He can not be heard to argue that the USMS breached a duty to him to protect property that he was not entitled to have in his possession. His legal papers and glasses are the only items that are potentially recoverable losses.

---

[3] Inmates who are in the custody of the BOP, on the other hand, are permitted to possess any property "which the inmate is authorized to retain upon admission to the institution, which is issued while the inmate is in custody, which the inmate purchases in the institution commissary, or which is approved by staff to be mailed to, or otherwise received by an inmate."  BOP Program Statement 5580.07. (December 28, 2005).

*Case No: 5:05cv173/SPM/MD*

After Hurricane Ivan, plaintiff and the other federal prisoners housed at the SRCJ were evacuated for their own safety because the facility had been damaged. When US Deputy Marshal Glenn Miller visited the jail to survey the damage, he noted "a significant amount of paper and other debris floating in the hallways, pods and cells." (Doc. 35, exh. 2 at 2). Plaintiff also states that "[p]ersonal property was piled indiscriminately along a water-logged corridor full of fallen roof and wall debris." (Complaint at 2).[4] Who stacked the property in this way and whether any of plaintiff's property was included among the items damaged by water intrusion is not apparent from the record. The three declarations submitted by U.S. Marshals in support of the government's motion indicate that before the prisoners were evacuated, they were allowed to collect legal papers and/or personal effects that had not been destroyed by the water. (Doc. 35, exh. 1 at 5-6; exh. 2 at 3; exh. 3 at 6). Plaintiff asserts to the contrary, but he does not argue or suggest that he was singled out as the only inmate not permitted to transport any personal property. More significantly, nowhere in his pleadings does he specifically state that he still had property in his possession, or that it was available to him, after the storm had passed. Indeed, in his initial grievance, all he said was that the property was "lost." (Doc. 1, ex. A2).

The defendant's declarants deduce that plaintiff either had no undamaged personal effects or elected not to take them, as the declarations also indicate that there was no bag of personal property identified as belonging to the plaintiff. (Doc. 35, exh. 1 at 6; exh. 3 at 7-8). If plaintiff either intentionally left his legal papers or they were destroyed by water that entered the SRCJ when the roof was destroyed,[5]

---

[4] He further described the conditions after the storm as being confined 4 people to a 2-man cell with no water, electricity, overflowing toilets, no ventilation and two inches of rain water on the floor. (Complaint, exh. A(2).

[5] Such damage would fall under the Act of God exception. See *Florida East Coast Railway v. Central and Southern Florida Flood Control District*, 519 F.2d 1184 (5th Cir. 1974) (binding on the Eleventh Circuit, see *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)).

*Case No: 5:05cv173/SPM/MD*

neither of which can be determined from the record, the USMS has not breached any duty owed to plaintiff. It may or may not be true that the plaintiff had no property, or elected to leave what he had, but that is speculation only. What is not speculation is plaintiff's failure to allege that he *did* have the property after the storm.

The next issue is causation. Assuming, for sake of argument, that plaintiff did lose these items, in order to show causation, he must show that the missing items survived Ivan's assault on the jail such that he could have taken them with him, but for the defendant's actions. If the items were destroyed during Ivan or its aftermath, or due to plaintiff's conscious decision not to bring the items with him, the USMS could not be held liable for that loss. He has failed to make this showing, because nowhere does he allege that he actually had the legal papers or the glasses in his possession, or available to him, when the evacuation took place. He has therefore failed to make out a prima facie case of negligence under Florida law.

### Plaintiff's motion to show cause

Finally the court will briefly consider plaintiff's "motion to show cause." He seeks to hold the office of the United States Attorney in contempt of court for its alleged failure to comply with the court's order directing it to investigate this matter and file a special report. Plaintiff appears to misapprehend the court's instructions. As the defendant in this matter, the government does not have the duty to conduct an independent investigation to prove the plaintiff's case. It need only conduct that investigation reasonably necessary to defend itself against this action. It was never the intent of the court to suggest that the government was required to prove the plaintiff's case, nor would it have the authority to do so. The burden of proof is on the plaintiff. Therefore, plaintiff's motion to show cause will be denied.

**Accordingly, it is ORDERED:**

The caption of this case shall be amended to reflect that the United States of America is the proper defendant in this action.

Plaintiff's "motion to show cause" in which he seeks to hold the office of the United States Attorney in contempt (doc. 47) is DENIED.

**And it is respectfully RECOMMENDED:**

That defendant's motion for summary judgment (doc. 35) be GRANTED, and this case be dismissed for lack of jurisdiction under the detention of goods exception to the FTCA, or in the alternative that defendant's motion for summary judgment be granted based on plaintiff's failure to make out a prima facie case, and judgment be entered accordingly.

At Pensacola, Florida, this 22nd day of January, 2007.


/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).